**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DONNA HAND, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS E. PEREZ, Secretary of the Department of Labor, *et al.*, <br><br> Defendants. | Civil Action No. 14-0880 (BAH) <br><br> Judge Beryl A. Howell |

## MEMORANDUM OPINION

The plaintiff, Donna Hand, proceeding *pro se*, filed this lawsuit against defendant Thomas E. Perez, the Secretary of the U.S. Department of Labor ("DOL"), and four officials of DOL's Office of Workers' Compensation Programs ("OWCP"),[1] seeking judicial review of certain DOL policies and procedures implementing the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA"), 42 U.S.C. § 7384 *et seq.* More specifically, the plaintiff asks the Court "to interpret and clarify the implementing federal regulations and the statute as it applies to the policy procedures issued by the Division of Energy Employee Occupational Illness Compensation Program Director, [Defendant] Rachel Leiton. . . . [to] determine if the policy is in compliance with the Statute, implementing federal regulations, the Administrative Procedure Act, and the Constitutional right of due process." Pet. at 2, ECF No. 1. The defendants have moved to dismiss this action for lack of subject matter jurisdiction, pursuant

---

[1] The four OWCP officials named as defendants are: Gary A. Steinberg, Director, Officer of Worker's Compensation Programs; Rachel Leiton, Director, Division of Energy Employees Occupational Illness Compensation Program; David Miller, Assistant Jacksonville District Deputy; and Armando Pinelo, Jacksonville Final Adjudication Branch Officer.

to Federal Rule of Civil Procedure 12(b)(1).  Defs.' Mot. Dismiss ("Defs.' Mot.") at 1, ECF No. 5.  For the reasons set forth below, the motion is granted.

## I.   BACKGROUND

The plaintiff's Petition is critical of policies and procedures employed by the Division of Energy Employee Occupational Illness Compensation ("DEEOIC"), which is the component of DOL's OWCP responsible for processing claims and administering benefits to eligible claimants under the EEOICPA.  This statute is briefly reviewed before turning to a summary of the plaintiff's Petition.

### A.  The Energy Employees Occupational Illness Compensation Program Act ("EEOICPA")

The EEOICPA, enacted in 2000, provides a compensation program for individuals or their survivors, who suffer from illnesses caused by exposure to radiation, beryllium, or silica while working at Department of Energy ("DOE") facilities or at certain contractor, subcontractor, or designated beryllium vendor facilities.  *See* 42 U.S.C. § 7384s(a)–(b).  Individuals who seek benefits, including a lump-sum payment of $150,000 and medical benefits, under the EEOICPA must file a claim with the OWCP.  20 C.F.R. §§ 30.100, 30.101.  Following review of the claim, OWCP makes a recommendation, based upon express findings of fact and conclusions of law, to the Final Adjudication Branch ("FAB"), whether the claimant qualifies for the program benefits.  20 C.F.R. §§ 30.300, 30.305, 30.306, 30.314, 30.316.  The claimant has sixty days to file with the FAB any objections to the OWCP's recommended decision.  20 C.F.R. § 30.310.  Upon consideration of the written record, any objections filed, and, if requested, an informal oral hearing, the FAB may either issue a final decision or return the claim to the district office for additional factual development.  20 C.F.R. §§ 30.113, 30.114, 30.316, 30.317.  A claimant dissatisfied with the final decision may, within 30 days, request reconsideration by the

FAB. 20 C.F.R. § 30.319(a). The FAB may grant reconsideration and issue a new final decision, 20 C.F.R. § 30.319(c), or reject the request, in which case the decision becomes "final" on the date that the request for reconsideration is denied. 20 C.F.R. § 30.319.

### B. The Plaintiff's Petition

The plaintiff identifies herself as "a qualified representative under the EEOICP" with "prudential standing" to challenge "the DEEOIC actions or inactions." Pet. at 4, ¶ D. She alleges that the Director of DEEOIC "has changed the application of the federal regulations" promulgated to implement the EEOICPA "by issuing memos, conference calls, policy clarifications and restrictive interpretation of the . . . Act." Pet. at 2. According to the plaintiff, these actions have resulted in "new policy procedures" for adjudicating potential claims that "chang[e] the substantial rights of claimants," without regard for earlier interpretations of the EEOICPA or the requirements of the Administrative Procedure Act ("APA"). *Id.* The plaintiff "disagrees with the DEEOIC['s]" interpretation of the EEOICPA and the policies flowing from that interpretation. Pet. at 4, ¶ C. To resolve these disagreements, the plaintiff seeks clarification of the Act and, to that end, proposes a number of questions for judicial resolution. These questions address: (1) whether DEEOIC's policies are too restrictive, in light of the statute's definition of Chronic Beryllium Disease, *id.* at 7; (2) whether DEEOIC has the authority to determine and define DOE facilities, *id.* at 11, and/or deny "sending all cancers to [National Institute of Occupational Safety and Health] . . . for a dose reconstruction," *id.* at 14; and (3) whether DEEOIC's administrative review procedure comports with due process, *id.* at 16, and burdens of proof, *id.* at 19–20.

In addition to resolving these legal questions, the plaintiff requests that the Court declare that: (1) "the policy procedures and memos used and issued by DEEOIC [are] not binding;" (2)

.
"the DDEOIC's action is in excess of the DEEOIC's delegated powers;" and (3) "the DEEOIC's ongoing action plainly cannot result in a valid DEEOIC order." *Id.* at 23, ¶ 48.

## II. LEGAL STANDARD

In evaluating a motion to dismiss for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), federal courts must be mindful that they "are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (internal quotation marks omitted). Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, "have an affirmative obligation to consider whether the constitutional and statutory authority exist for us to hear each dispute." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)) (internal quotation marks omitted). Absent subject matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006); FED. R. CIV. P. 12(h)(3).

Article III of the Constitution restricts the power of federal courts to hear only "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1; *see Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014) ("Article III of the Constitution limits the jurisdiction of federal courts to actual cases or controversies between proper litigants." (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 661 (D.C. Cir. 1996)) (internal quotation marks omitted)). "The doctrine of standing gives meaning to these constitutional limits by identify[ing] those disputes which are appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

560 (1992)) (internal quotation marks omitted).  Absent standing by the plaintiff, the court lacks subject matter jurisdiction to hear the claim and dismissal is mandatory.  *See* FED. R. CIV. P. 12(h)(3).

When the purported lack of jurisdiction stems from a lack of standing, the court "must assume that [the plaintiff] states a valid legal claim." *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003); *see also Mendoza*, 754 F.3d at 1010 ("In evaluating plaintiffs' standing at the motion to dismiss stage we must assume that the plaintiff[s] state[ ] a valid legal claim and must accept the factual allegations in the complaint as true." (alterations in original) (quoting *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012)) (internal quotation marks omitted)).  The proponent of jurisdiction bears the burden of proving that it exists by "support[ing] each element of [his or her] claim to standing by affidavit or other evidence" and "show[ing] a substantial probability that [he or she has] been injured, that the defendant caused [his or her] injury, and that the court could redress that injury."  *Carbon Sequestration Council v. EPA*, Nos. 14-1046, 14-1048, 2015 WL 3461419, at *2 (D.C. Cir. June 2, 2015) (quoting *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002)) (internal quotation marks omitted); *see also Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  In determining jurisdiction, "the district court may consider materials outside the pleadings."  *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *see also Belhas v. Ya'Alon*, 515 F.3d 1279, 1281 (D.C. Cir. 2008) (examining materials outside the pleadings in ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction); *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (noting that courts may consider materials outside the pleadings in ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction).

### III. DISCUSSION

The defendants assert that this Court lacks subject matter jurisdiction to hear this case because: (1) the plaintiff's petition "seeks no more than an advisory opinion from this Court, and therefore fails to meet the threshold requirements of a 'case or controversy' under Article III of the United States Constitution;" and (2) the plaintiff, as a representative of claimants in OWCP administrative proceedings, "is not herself an aggrieved party with regard to any final agency action taken by DOL under EEOICPA" and therefore lacks both Article III and statutory standing. Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") at 2, ECF No. 5. For the reasons discussed in more detail below, the Court agrees that this case must be dismissed for lack of subject matter jurisdiction.[2]

#### A. No Article III Case or Controversy

The plaintiff concedes that a federal court cannot render advisory opinions but insists that "the court has the right and the duty to decide questions that affect the rights of litigants." Pl.'s Resp. at 1, ECF No. 9-1. Indeed, the law is clear that "[t]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Pub. Serv. Elec. & Gas Co. v. FERC*, 783 F.3d 1270, 1274 (D.C. Cir. 2015) (quoting *Flast v. Cohen*, 392 U.S. 83, 96 (1968)) (internal quotation marks omitted). The constitutional "case or controversy" requirement set out in Article III precludes federal courts from entertaining hypothetical issues or rendering advisory opinions. *See Princeton Univ. v. Schmid*, 455 U.S.

---

[2] After the defendants filed their reply in support of the motion to dismiss, the plaintiff, with the defendants' consent, requested the opportunity to file a surreply. *See* Pl.'s Mot. Leave File Surreply, ECF No. 9. The Court granted the plaintiff's request and, likewise, gave the defendants an opportunity to file a surreply. *See* Min. Order, Nov. 25, 2014, ECF No. 10. The plaintiff subsequently moved to dismiss the defendants' underlying motion for failure to file a surreply. Pl.'s Mot., ECF No. 11. Contrary to the premise of the plaintiff's motion, the Court's willingness to grant the plaintiff a surreply does not impose on the defendants a requirement to respond to the plaintiff's surreply with their own surreply. *See* Defs.' Opp'n Pl's Mot. at 2–3, ECF No. 12. Consequently, the plaintiff's motion is DENIED.

100, 102 (1982) (per curiam); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 470 (1982). "To satisfy the firmly established Article III case or controversy requirement, 'there must be a live controversy at the time' [the court] review[s] the case." *Pub. Serv. Elec. & Gas Co.*, 783 F.3d at 1274 (quoting *Sosna v. Iowa*, 419 U.S. 393, 402 (1975)).

As the defendants note, the plaintiff's petition fails this fundamental constitutional requirement because the request for interpretation of a federal statute and review of DEEOIC policies are divorced from any underlying administrative claim. Defs.' Mem. at 5. Moreover, the "case or controversy" requirement instructs courts only "to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009). Without the presence of a redressable injury to the plaintiff, the Court is precluded from engaging in the type of wholesale or partial review of agency action sought by the plaintiff. *See id.* at 493–94. As explained more fully below, the plaintiff has not suffered the concrete, actual, and redressable injury required before the Court may exercise subject matter jurisdiction over the plaintiff's constitutional and statutory challenges to agency action.

**B. Standing**

*1. Article III Standing*

The Supreme Court has explained that "the irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. First, a claimant must show: (1) he or she has suffered an "injury in fact" that is "(a) concrete and particularized," and "(b) actual or imminent, not conjectural or hypothetical." *Id.* (citations and internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of,"

*i.e.*, the injury alleged must be "fairly . . . trace[able] to the challenged action of the defendant." *Id.* (alterations in original; internal quotation marks omitted). Finally, it must be "likely . . . that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks omitted). In short, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components*, *Inc.*, 134 S. Ct. 1377, 1386 (2014). Moreover, the plaintiff in this case "must allege ongoing or imminent injury, rather than purely past injury, because [she] seek[s] only declaratory relief." *Nat'l Ass'n of Home Builders v. EPA*, No. 13-5290, 2015 WL 2330474, at *5 (D.C. Cir. May 15, 2015) (citing *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011) and *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

In addition to the absence of a requisite case or controversy to serve as a predicate for this Court's exercise of jurisdiction, the plaintiff's lack of standing is a showstopper to her pursuit of judicial resolution of purely legal questions. The question of "[s]tanding focuses on the party and not on the issues sought to be adjudicated." *Nat'l Fed'n of Fed. Emps. v. Cheney*, 883 F.2d 1038, 1041 (D.C. Cir. 1989) (citing *Flast v. Cohen*, 392 U.S. 83, 99 (1968)). The plaintiff asserts that she has standing because, as "a qualified representative," the challenged DEEOIC policies have made successful claims under the EEOICPA more difficult to achieve and resulted in both reputational and monetary damage to her. Pet. at 4–5, ¶¶ D–E. These two alleged injuries are insufficient to establish standing in this case.

With respect to the first alleged injury, the plaintiff contends that the challenged policies "created a reputational injury, which is a deprivation of liberty," since the DEEOIC found in an unspecified "Final Decision and in the denial of reopening requests that the Plaintiff Donna Hand

8

'misinterpreted the law' or that the 'argument is invalid.'" Pet. at 5, ¶ E.  The plaintiff's first alleged injury predicated on reputational harm cannot succeed based on the bare allegations presented.  The defendants correctly point out that reputational harm alone is "not considered by courts to be a protected liberty interest."  Defs.' Mem. at 8 (citing *Grant v. District of Columbia*, 908 A.2d 1173, 1180 (D.C. 2006)); *see also Paul v. Davis*, 424 U.S. 693, 701 (1976) ("[R]eputation alone, apart from some more tangible interests such as employment, is [not] either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause."); *Mead v. Indep. Ass'n*, 684 F.3d 226, 233 (1st Cir. 2012) ("A due process claim cannot rest upon reputational harm alone."); *O'Donnell v. Barry*, 148 F.3d 1126, 1141 (D.C. Cir. 1998) ("[A] showing of reputational harm alone cannot suffice to demonstrate that a liberty interest has been infringed." (citing *Siegert v. Gilley*, 500 U.S. 226, 239–40 (1991)).

While the D.C. Circuit has indicated that "[a] plaintiff may be able to state a due process claim based on the allegedly defamatory actions of government officials if 'the defamation [is] accompanied by a discharge from government employment or at least a demotion in rank and pay,'" *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 994 (D.C. Cir. 2014) (quoting *Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983)), the plaintiff has not, and cannot, substantiate her due process claim with these requisite allegations.  *See generally* Pet.  She does not purport to be a government employee, let alone one who was discharged or demoted in rank and pay due to any defamatory action by DOL.  In any event, even assuming as true the plaintiff's allegation that the DEEOIC expressed disagreement with the plaintiff's interpretation of the statute, this does not amount to a defamatory action sufficient to establish a due process violation. Accordingly, the plaintiff's allegation that she incurred reputational injury does not amount to an injury-in-fact to support standing.

The plaintiff's second theory of injury for standing purposes fares no better. She appears to contend that the challenged policies caused her monetary damage because "[t]he DEEOIC's action in interpreting the law, in issuing policies that are not consistent" makes it "impossible to obtain a consistent ruling or a fair notice of what was required to obtain benefits," thereby depriving claimant representatives, such as the plaintiff, of the right to collect representative fees under the statute. Pet. at 5, ¶ D.

In support of her argument that she is entitled to collect representative fees, the plaintiff cites Section 7385g of the EEOICPA, *see* Pet. at 5, ¶ E, but this statutory provision does not guarantee any fee for representation before administrative proceedings. *See* 42 U.S.C. § 7385g. On the contrary, as the defendants explain, this section "only sets limits on the amount that may be charged by a representative for services rendered in connection with a claim under Part B [of the Act], and provides a monetary penalty for representatives whose fees exceed that amount." Defs.' Mem. at 7. The DOL regulation implementing this EEOICPA provision includes the same fee limitations. *See* 20 C.F.R. § 30.603. Moreover, DOL regulations make clear that the government is not responsible for payment of any fees for such representation. *See* 20 C.F.R. § 30.602 (providing that "[a] representative may charge the claimant a fee for services and for costs associated with representation before OWCP" but "[t]he claimant is solely responsible for paying the fee and other costs" and OWCP is not "in any way liable for the amount of the fee and costs"). Indeed, another district court has made plain to this same plaintiff that "[she] must seek payment of the plaintiff's representative fee from each claimant." *Hand v. Bibeault*, No. 8:09-CV-1921-T-23AEP, 2010 WL 337036, at *2 (M.D. Fla. Jan. 22, 2010), *aff'd*, 400 F. App'x 526 (11th Cir. 2010).

Thus, to the extent that the plaintiff has suffered monetary harm from her lack of success before OWCP administrative tribunals, this monetary damage is due to her inability, for some reason, to collect fees from the claimants whom she represented. Whatever the reason may be, it is neither attributable to, nor redressable by, DOL, but is instead the result of the plaintiff's own choice of claimants to represent or the fee arrangements to which she has agreed. In short, the monetary harm is self-inflicted, and the D.C. Circuit "ha[s] consistently held that self-inflicted harm doesn't satisfy the basis requirements for standing." *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006); *see also Ellis v. Comm'r*, No. 14-0471, 2014 WL 4557643, at *9 (D.D.C. Sept. 16, 2014) ("[I]t is well-settled in this jurisdiction that self-inflicted injuries—injuries that are substantially caused by the plaintiff's own conduct—sever the causal nexus needed to establish standing.").

In sum, the conclusory allegations in the Petition of lost fees and reputational harm do not establish an injury-in-fact sufficiently concrete or redressable to support Article III standing.

### 2. *Prudential Concerns Preclude Exercise of Jurisdiction*

Even if the plaintiff's bare allegations of reputation and monetary loss due to the challenged DEEOIC's policies were sufficient to establish Article III standing, prudential concerns would bar the exercise of jurisdiction here. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("[T]he question of standing . . . . involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."); *Cheney*, 883 F.2d at 1041 ("The requirements of standing are generally separated into two categories: the constitutional requirements of Article III and the prudential requirements crafted by the Judiciary."). The general rule is that "a party . . . must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125,

129 (2004) (quoting *Warth*, 422 U.S. at 499) (internal quotation marks omitted).  "This rule assumes that the party with the right has the appropriate incentive to challenge (or not challenge) government action and to do so with the necessary zeal and appropriate presentation."  *Id*. Without such a constraint, courts would likely be "called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights."  *Id.* (quoting *Warth*, 422 U.S. at 500) (internal quotation marks omitted).

Nevertheless, a plaintiff may be permitted to assert the rights of a third party in certain circumstances.  Specifically, "[t]he Supreme Court has articulated three prudential considerations to be weighed when determining whether an individual may assert the rights of others: (1) [t]he litigant must have suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute, (2) the litigant must have a close relation to the third party, and (3) there must exist some hindrance to the third party's ability to protect his or her own interests."  *Lepelletier v. FDIC*, 164 F.3d 37, 43 (D.C. Cir. 1999) (second alteration in original) (internal quotation marks omitted); *see also Kowalski*, 543 U.S. at 130; *Kungle v. State Farm, Fire & Cas. Co.*, 48 F. Supp. 3d 67, 75 (D.D.C. 2014).  Even assuming *arguendo* that the plaintiff's allegations of monetary and reputational injury satisfy the first requirement and show she has a concrete interest in the outcome of this lawsuit, the plaintiff fails to satisfy the second and third requirements to assert the rights of the claimants whom she has represented or seeks to represent in OWCP administrative proceedings.  Thus, third-party standing still cannot save the plaintiff in this case.

*Kowalski* is instructive. 543 U.S. at 127. There, the Supreme Court considered whether attorneys had third-party standing,[3] on behalf of hypothetical indigent clients, to challenge an amendment to Michigan's constitution "provid[ing] that an appeal by an accused who pleads not guilty or *nolo contendere* shall be by leave of the court and not as of right." *Id*. at 127–28 (internal quotation marks omitted). The attorneys asserted an injury-in-fact because their salaries would be affected by the legislative change. *Id*. at 137 (Ginsburg, J., dissenting). The Court rejected the third-party standing of the attorneys under the prudential standing doctrine finding, first, that the case did not "involve[] the representation of known claimants," so the attorneys "ha[d] no relationship at all" "with their alleged 'clients.'" *Id*. at 131. Second, the Court found there was no "hindrance to the indigents' advancing their own constitutional rights against the Michigan scheme." *Id.* at 131–32 (internal quotation marks omitted). Likewise, in this case, the plaintiff has not demonstrated any relationship with any known claimant, nor has she proffered allegations to explain how any claimants whom she has represented or whom she seeks to represent before the OWCP are in any way hindered in challenging the DOL policies at issue here. *See* Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply") at 4–5, ECF No. 7 (pointing out that the plaintiff does not allege that the claimants she represents are in any way hindered from bringing suit); *see generally* Pet. Accordingly, the plaintiff cannot meet the third-party standing requirements and the Court must dismiss the case on prudential grounds as well.[4]

---

[3] The Court "assume[d] the attorneys ha[d] satisfied Article III and address[ed] the alternative threshold question whether they ha[d] standing to raise the rights of others." *Id.* at 129.

[4] The Supreme Court recently held that prudential concerns should not preclude the Court from hearing a dispute where Congress has created a cause of action. *See Lexmark*, 134 S. Ct. at 1388 ("[A] court . . . cannot limit a cause of action that Congress has created merely because 'prudence' dictates."). Even if the plaintiff had Article III standing, however, this Court may not adjudicate the plaintiff's claims because she does not "fall within the class of persons whom Congress has authorized to sue under the Administrative Procedure Act." *Mendoza*, 754 F.3d at 1016. "[A] plaintiff's grievance" must "fall[] within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)) (internal quotation marks omitted). The plaintiff contends that the interest she asserts "is in the 'zone of interest'" "[s]ince the 'zone of interest' includes interests protected by the statute, and the statute regulates the amount of

## IV. CONCLUSION

For the foregoing reasons, the plaintiff has failed to present a live case or controversy and lacks standing. She seeks resolution of a number of legal questions which, if answered, would render merely an advisory opinion that the Court is not permitted to provide. Accordingly, the defendants' motion to dismiss for lack of subject matter jurisdiction is GRANTED.

An Order consistent with this Memorandum Opinion will be contemporaneously entered.

Date: June 5, 2015

_____
BERYL A. HOWELL
United States District Judge

---

financial compensation that the authorized representative may obtain under the EEOICP Act, and the authorized representative cannot obtain a consistent ruling or interpretation of the laws, rules, and/or policy . . . ." Pet. at 5, ¶ D (citing *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)). Section 702 of the APA grants a right of review to "[a] person . . . adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The defendants are correct that "[t]he interests identified by [the plaintiff] in her petition and addressed above cannot be said to even arguably fall within the zone of interests intended to be protected by EEOICPA." Defs.' Mem. at 9. The purpose of the statute was to provide easier access to compensatory benefits for claimants who suffered radiation-related illnesses, not to secure representative fees for qualified representatives, like the plaintiff.